U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET





**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 28, 2007**                    **United States Bankruptcy Judge**

---

IN  THE  UNITED  STATES  BANKRUPTCY  COURT
FOR  THE  NORTHERN  DISTRICT  OF  TEXAS
DALLAS  DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RICHARD STEPHEN GOLD, JR., | § | CASE NO. 04-34122-SGJ-13 |
| DEBTOR. | § | |
| | § | |
| RYAN GOLD and | § | |
| QUINN GOLD, | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | ADVERSARY NO. 06-3512 |
| | § | |
| RICHARD STEPHEN GOLD, JR., | § | |
| DEFENDANT. | § | |

**MEMORANDUM  OPINION  IN  SUPPORT  OF  DECLARATORY  JUDGMENT  THAT  CLAIMS
OF  RYAN  AND  QUINN  GOLD  HAVE  NOT  BEEN  DISCHARGED**

This memorandum opinion encompasses the bankruptcy court's

findings of facts and conclusions of law, pursuant to Federal

Rules of Bankruptcy Procedure 7052, in connection with a trial

held May 21, 2007 and June 4, 2007.  The trial was in connection

with the Complaint of Ryan and Quinn Gold ("Ryan" and "Quinn"),

brother and sister, against their father Richard Stephen Gold, Jr. ("Richard Jr."), a recently discharged Chapter 13 debtor. As further explained herein, the Complaint essentially sought a declaratory judgment that certain multimillion dollar claims held by Ryan ($2.5 million) and Quinn ($7.5 million) against Richard Jr., pursuant to two Illinois state court civil judgments, dating back to 1995, were not discharged in either Richard Jr.'s still-open Chapter 13 case, or in his earlier-filed Chapter 7 case, due to: (a) Richard Jr.'s failure to provide Constitutionally sufficient written notice of his cases to Ryan and Quinn, (b) Ryan and Quinn's lack of actual knowledge of the cases in time to protect their rights; and (c) the fact that Ryan's and Quinn's claims stem from willful and malicious injuries, as referenced in section 523(a)(6) of the Bankruptcy Code. The relevant authority for the relief sought in the Complaint is, *inter alia*, 11 U.S.C. § 523(a)(3)(B) and (6); 11 U.S.C. § 1328(a); and Fed. R. Bankr. P. 7001(4), (5), (6), and (9).[1] Where appropriate, a finding of fact shall be construed as a conclusion of law and vice versa. The court reserves the right to make further findings of fact and conclusions of law, as it determines necessary.

---

[1] All references to the Bankruptcy Code herein refer to its pre-BAPCPA version, since the bankruptcy cases involved in this adversary proceeding were filed prior to Congress's enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

**FACTS**[2]

1. Richard Jr. has filed two bankruptcy cases: (a) a Chapter 7 case, Case No. 03-82766-HDH-7, filed on December 11, 2003 (the "Chapter 7 Case") in which he received a discharge on April 6, 2004, and (b) a Chapter 13 case filed on April 7, 2004 (the "Chapter 13 Case"), in which a plan was subsequently confirmed and completed, and in which Richard Jr. received a second discharge, pursuant to an Order Discharging Debtor After Completion of Chapter 13 Plan, entered April 4, 2006. The evidence indicated that the Chapter 7 Case was a no-asset case (with no distribution to unsecured creditors), and the Chapter 13 Case involved a plan that dealt with debt that was not discharged in the Chapter 7 Case.[3]

---

[2] Certain of these facts were established in evidence presented at a hearing held June 12, 2006, in connection with Ryan's and Quinn's Motion to Dismiss Chapter 13 Case [Doc. No. 19] and Motion to Vacate/Reconsider Order of Discharge [Doc. No. 20], filed in the bankruptcy case of *In re Richard Steven Gold, Jr.*, 04-34122-SGJ-13, which motions were resolved by this court in a Memorandum Opinion in Support of Order Denying both Motion to Dismiss Chapter 13 Case and Motion to Vacate/Reconsider Order of Discharge, Without Prejudice to the Filing of an Appropriate Adversary Proceeding, entered by this court on September 6, 2006 [Doc. Nos. 41 & 42]. The transcript of the June 12, 2006 hearing was offered and admitted as Pls. Ex. 3 in the trial of this adversary proceeding.

[3] Note that the Supreme Court has essentially acknowledged and refused to prohibit so-called "Chapter 20s" – that is a Chapter 13 case filed immediately upon the heels of a Chapter 7 discharge, in order to deal with nondischarged debt. *See Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991) ("Congress did not intend categorically to foreclose the benefit of chapter 13 reorganization to a debtor who previously has filed for Chapter 7

2.   Richard Jr. is the father of Ryan and Quinn, both of whom are now adults.  Ryan and Quinn each hold (or are the beneficiaries of) judgments against Richard Jr., dating back to 1995, arising from allegations of child sexual abuse that allegedly occurred December 24-25, 1984.

3.   Specifically, on July 12, 1995, the Circuit Court of Cook County, Illinois, Judge Edward R. Burr ("Illinois Civil Court"), in Cause No. 92L-15751, entered a judgment in favor of Ryan in the amount of $2,500,000, and a separate judgment in favor of Karen Killoren ("Karen"), as mother and next friend of Quinn,[4] in the amount of $7,500,000 (collectively, the "Foreign Judgments"), after a post-appearance default by Richard Jr., and after a prove-up by Ryan and Quinn before a jury of twelve in which the jury found Richard Jr. liable for committing conduct against Ryan and Quinn that was "willful, intentional and malicious."  Pls. Ex. 1, pp. 23-25A.[5]

---

relief.").

[4] Quinn was a minor (age 16) at the time of the Illinois Civil Court action.

[5] The Complaint filed December 21, 1993, initiating Cause No. 92L-15751, at paragraphs 2-4, states that on December 24 and 25, 1984, Richard Jr., at a motel in Skokie, Cook County, Illinois, committed "assault and battery upon [Quinn] by touching her with his hands in an unusual and provoking nature upon her body, laid his hands on her in a lewd and lascivious manner and did have sexual intercourse with her" in "full hearing and view" of Ryan. Pls. Ex. 1, page 9-9A.  Both Quinn and Ryan were minors at the time.

4.   Prior to the rendering of the Foreign Judgments (in
1988), Richard Jr. pled guilty to a criminal charge of battery
brought in the Circuit Court of Cook County, Illinois, Second
Municipal District, Judge Marcia Orr ("Illinois Criminal Court"),
in Cause No. 88 C2-20284-01, which battery charge was predicated
on the same alleged child sexual abuse of December 24-25, 1984.
Richard Jr. was sentenced to 12 months probation plus psychiatric
counseling.  Pls. Ex. 1 is a complete, certified copy of the file
from the Illinois Civil Court.  Pls. Ex. 2 is a complete,
certified copy of the file from the Illinois Criminal Court.
Pls. Ex. 1 contains the criminal file, in toto, so the court will
refer exclusively to Pls. Ex. 1, for convenience.  Pls. Ex. 1,
page 2, is the "Information" describing the battery offense
involving Quinn occurring on December 24-25, 1984, and page 3 is
a plea agreement signed by Richard Jr. and dated June 23, 1988.

5.   Richard Jr. testified that he had not had any contact
with his children since 1984 or 1985.  He has had no personal
relationship with them and testified he has not been aware where
they were living since some time in the 1980s.  Indeed, the
evidence reflected that Richard Jr.'s visitation rights were
essentially terminated as to Ryan and Quinn in 1988.  Pls. Ex. 1,
pages 6-6L, is an agreement entered in the Circuit Court of Cook
County, Illinois Domestic Relations Division, modifying an
earlier rendered divorce decree between Karen and Richard Jr., to

terminate visitation rights and, at paragraph 3, states that "Karen and Richard Jr. agree that Richard Jr. is not presently a fit and proper person to have sole or joint custody, care and control of the minor children. This agreement is based, in part, on Richard Jr.'s conviction in the case of The People of the State of Illinois vs. Richard Gold, No. 88 C220284-01 wherein Richard Jr. pled guilty and was found guilty of committing a battery against his minor daughter, Quinn Leah Gold." The domestic relations agreement is signed by Richard Jr. and Karen and is dated June 22, 1988.

6. Richard has been involved in litigation with Karen fairly recently in Texas state court proceedings (litigation that has gone on for many years) relating to post-divorce family matters. Quinn credibly testified that she had testified in these state court matters in 2001 or 2002, at which her father's attorney asked for her address, and she would not give it to him, but she did tell him the college she was attending.

7. Ryan and Quinn credibly testified that they were not afforded any written notice and had no actual knowledge of either of Richard Jr.'s bankruptcy cases until February 2005 (when, during some family mediation involving, among other things, their paternal grandparents' right to visit them, the information that Richard Jr. had filed bankruptcy was revealed by an attorney) and, at that time, they did not know of any of the details, such

-6-

as the court or case number, or whether a bankruptcy case was still pending.[6]

8.    Ryan and Quinn argue that their claims against Richard Jr. should not be deemed to have been discharged in the Chapter 7 Case because of lack of written notice and actual knowledge in time to protect their rights (such as by bringing a section 523(a)(6) nondischargeability action).[7]

---

[6] Ryan's and Quinn's mother, Karen, likewise testified that February 2005, during the family mediation, was also when she first learned of Richard Jr.'s bankruptcy cases (through Mr. Craig Smith, her counsel in the family mediation).

[7] Fourteen months after learning of the bankruptcy cases, in April 2006, just after Richard Jr.'s April 4, 2006 discharge order in his Chapter 13 case, Ryan and Quinn pursued their first legal action in this bankruptcy court:  they filed a Motion to Dismiss the Chapter 13 Case ("Motion to Dismiss").  Ryan and Quinn argued that since, at the time Richard Jr. filed his Chapter 13 Case (April 7, 2004), the unsecured debt limit under section 109(e) of the Bankruptcy Code for Chapter 13 eligibility was $307,675, Richard Jr. was not eligible to file his Chapter 13 Case, because his unsecured debt was in excess of $10,000,000 (the amounts owed to Ryan and Quinn on their Foreign Judgments)—since the claims underlying the Foreign Judgments should be deemed not discharged in the Chapter 7 Case due to lack of sufficient notice to Ryan and Quinn of the Chapter 7 Case. Ryan and Quinn also filed an alternative Motion to Vacate/Reconsider Order of Discharge ("Motion to Vacate") in April 2006.  Ryan and Quinn once again argued that Richard Jr. was not eligible to be a Chapter 13 debtor, pursuant to section 109(e), because his unsecured debt (if the court counts Ryan's and Quinn's claims), exceeded $307,675.  Therefore, they argued that the order of discharge entered in Richard Jr.'s Chapter 13 Case should be vacated.  The court denied these Motions, ruling that Ryan and Quinn were essentially seeking a declaratory judgment that their claims had not been discharged in either the Chapter 7 or Chapter 13 case, which required the filing of an adversary proceeding.  See Memorandum Opinion in Support of Order Denying both Motion to Dismiss Chapter 13 Case and Motion to Vacate/Reconsider Order of Discharge, Without Prejudice to the

9.   The evidence is that Richard did attempt to provide
some written notice of his Chapter 7 Case to Ryan and Quinn.
Richard Jr. also scheduled (in his Schedule F filed in his
Chapter 7 Case) Ryan's, Quinn's, and Karen's claims.  Richard Jr.
attempted notice of his Chapter 7 Case on Ryan and Quinn solely
by serving three *former* lawyers of Ryan and Quinn (or, rather,
lawyers of Quinn's next friend, Karen).  Those former lawyers
were: (a) Charles P. Carroll at a law firm called Morrison,
Carroll & McGrath, Northbrook Office Court, 666 Dundee Road,
Suite 1903 in Northbrook, Illinois 60062, who was the attorney
who represented Ryan and Karen, as mother and next friend of
Quinn, in the Illinois Civil Court lawsuit (the evidence
reflected that this representation ceased in 1995 or 1996); (b)
Brittan L. Buchanan at the law firm of Hughes & Luce, LLP, 111
Congress Ave., Suite 900, in Austin, Texas 78701, an attorney who
represented Ryan and Karen, as mother and next friend of Quinn,
in connection with domestication of the Foreign Judgments to
Texas (the evidence reflected that this representation ceased in
1995 or 1996); and (c) Alan Wittenberg of the law firm of
Wittenberg & Assoc., PLLC, Preston Plaza Tower, Suite 800, 8300
Douglas Ave., Dallas, TX 75225, who represented Ryan and Karen,
as mother and next friend of Quinn, to pursue post-judgment

_____

Filing of an Appropriate Adversary Proceeding, entered by this
court on September 6, 2006 [Doc. Nos. 41 & 42] in the Chapter 13
Case.

collection efforts in Texas on the Foreign Judgments (the evidence reflected that this representation ceased in 2001 or 2002).

10. Ryan and Quinn argue that the written notices served on these former attorneys (of Ryan and Karen) in the Chapter 7 Case did not meet minimal Constitutional requirements of due process, in that they were not reasonably calculated to give Ryan and Quinn notice of the Chapter 7 Case.

11. With regard to the bankruptcy notices sent to attorney Charles P. Carroll, Ryan and Quinn unequivocally and credibly testified that they have not had any contact with Charles P. Carroll since shortly after the Foreign Judgments were rendered in 1995. Mr. Carroll did not forward any of the bankruptcy notices on to them—assuming he even received them. Karen further credibly testified that the last contact she had with Mr. Carroll was approximately early 1996. Karen represented that Mr. Carroll's law firm split up, she thinks, in early 1996 and she does not know where any of the lawyers associated with that firm went, and has been unable to locate them despite a search within a five-state region for these attorneys.

12. With regard to the bankruptcy notices sent to attorney Brittan Buchanan at Hughes & Luce, Karen credibly testified that Hughes & Luce, LLP was the law firm that did her "original divorce," and that an attorney with that firm named Darrel Jordan

-9-

(not Brittan Buchanan) was her attorney. Karen further credibly testified that Mr. Buchanan and Hughes & Luce were employed to domesticate the Foreign Judgments for Ryan and Quinn in 1996, as well, and that she had no further contact with Mr. Buchanan after such time (except that she contacted him within two weeks after the February 2005 mediation to inquire about Richard Jr.'s bankruptcy notices, and he represented to her that he did not receive the notices). Karen testified that she had learned that Mr. Buchanan left Hughes & Luce to form his own law firm in April of 2003 (which would have been eight months before the filing of the Richard Jr. Chapter 7 Case and a year before his discharge therein).

13. With regard to bankruptcy notices sent to attorney Mr. Wittenberg, the most recent attorney in the picture, Mr. Wittenberg himself credibly testified at trial that he ceased representing Ryan and Quinn in 2001 and ceased representing Karen in 2002. Mr. Wittenberg also testified that he has not been kept up-to-date on Ryan's and Quinn's addresses, since the representation ceased, and that he probably would not have had a good address for them since 2001. Mr. Wittenberg also testified that he officed at the address at which he was allegedly served the Chapter 7 Case notices—8300 Douglas Ave. in Dallas, Texas—from 1993 to March of 2001, when he moved to different offices on Preston Road in Dallas, where he stayed until August

of 2002.  In August of 2002, he went to work for a client for four months and then went back on his own in 2003, then officing at 6440 North Central Expressway in Dallas (since 2003).  He testified specifically that at the time the Chapter 7 Case notices were served in December of 2003, he had not been at the address to which the Chapter 7 Case notices were sent in over one year.  Mr. Wittenberg does not recall whether he received a notice of Richard Jr.'s Chapter 7 Case, but testified that if he had, he would have forwarded it to the client *if it had a client name on it.*  He would not have forwarded a notice if it were simply addressed to his firm with no client name on it (as is the situation in this case).

14.  In summary, Quinn credibly testified that no lawyer, nor her mother, nor her brother told her about Richard Jr.'s Chapter 7 Case.  She did not receive any of the notices and she had no actual knowledge of Richard Jr.'s bankruptcy filings until February 2005.

15.  In summary, Ryan credibly testified that he has not received any phone calls from any attorneys in the last several years, including Buchanan and Wittenberg, and was not told by them or anyone else about Richard Jr.'s bankruptcy case (until February 2005).  He moved from Chicago in 2006 and never provided his address to Richard Jr.  He did not receive any of the notices and he had no actual knowledge of Richard Jr.'s bankruptcy

filings until February 2005.

16. In summary, Karen credibly testified that no one at Hughes & Luce, nor Mr. Buchanan, nor Mr. Wittenberg, told her of Richard Jr.'s bankruptcy case. Karen also testified that, at the time Richard Jr. filed the Chapter 7 Case, she had another attorney named Kent Brooks, a state court appellate attorney representing her in connection with post-divorce litigation before the Texas Supreme Court. The appeal handled by Mr. Brooks lasted from approximately 2003 to 2005. The court took judicial notice that Mr. Brooks's name did not appear on the service lists in Richard Jr.'s bankruptcy cases.

17. Quinn testified that she had occasional contact with a cousin on her father's side of the family (Anthony Lynch) with regard to whom Richard Jr. also testified he was in occasional communication. Quinn never learned from Anthony Lynch about the bankruptcy cases of Richard Jr.

18. Richard Jr. did not provide Ryan and Quinn (or their mother) with any notice of the Chapter 13 Case because he/his attorney believed that their claims were discharged in the Chapter 7 Case, since he gave notice to the three attorneys.

**CONCLUSIONS OF LAW**

**I.    Survival of Ryan's and Quinn's Claims in the Chapter 7 Case**

19.    The court considers the statutory starting place, in
determining whether Ryan's and Quinn's claims first survived the
Chapter 7 Case, as section 523(a)(3)(B), which provides that a
"discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b)
of this title does not discharge an individual debtor from any
debt . . . (3) neither listed nor scheduled under section 521(1)
of this title . . . , in time to permit . . . (B) if such debt is
a kind specified in paragraph (2), (4) or (6) of this subsection,
timely filing of a proof of claim and timely request for a
determination of dischargeability . . . unless such creditor had
notice or actual knowledge of the case in time for such filing
and request."  Thus, the relevant issues, according to this
statute, are:  (a) the sufficiency of the written notice (*i.e.,*
looking at the addresses shown for Ryan and Quinn on the creditor
list/mailing matrix); (b) whether, alternatively, Ryan and Quinn
had actual knowledge (or constructive notice) of the bankruptcy
in time to take action in the Chapter 7 Case; and (c) whether
Ryan and Quinn have the type of claims referred to in section
523(a)(2), (4) or (6), so that they might have requested a
determination of nondischargeability as to their claims in the
Chapter 7 Case.  Here, since the Chapter 7 Case was a no asset
case with no distributions to unsecured creditors, the issue of

-13-

Ryan's and Quinn's ability to file a proof of claim is irrelevant.[8]

## A. Insufficiency of the Written Notices of the Chapter 7 Case

20. With regard to the sufficiency of the notices to Ryan and Quinn, "[t]he debtor bears the initial burden under § 523(a)(3) regarding adequacy of notice." *In re Harbaugh*, 301 B.R. 317, 320-21 (8th Cir. BAP 2003). Moreover,

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *** The notice must be of such nature as reasonably calculated to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance. *** But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied. 'The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.'
>
> But when notice is a person's due, process which is a mere gesture is not due process. The means employed

---

[8]Where a debtor fails to notice a creditor who holds a claim that is not subject to the non-discharge provisions of section 523(a), and the debtor's case is a no-asset Chapter 7 case, there is no harm to that creditor by the failure to receive adequate notice. *In re Neilsen*, 383 F.3d 922, 926 (9th Cir. 2004). This is because "the filing of a [proof of] claim is meaningless and worthless in a no-asset case" because there are no assets to distribute on account of those claims. *Id*. at 926-27. It is for this reason that the bankruptcy rules permit courts to dispense with the filing of proofs of claim in no-asset cases. *Id*. at 927.

must be such as one desirous of actually informing the
absentee might reasonably adopt to accomplish it.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15
(1950) (internal citations omitted).

21.  Ryan and Quinn were known creditors to Richard Jr. as
of the filing of the Chapter 7 Case.  Ryan and Quinn, therefore,
were entitled to actual notice of the Chapter 7 Case.

22.  Ryan and Quinn did not receive sufficient notice of the
Chapter 7 Case.  As set forth above, Richard Jr.'s only attempted
service of notice of his Chapter 7 Case to Ryan and Quinn was
through attorneys who had represented Ryan and Quinn (actually
Quinn's next friend, Karen) in the distant past:  (a) Mr. Carroll
(who, according, to the credible testimony, ceased his
representation role in 1995-1996—more than six years before the
Chapter 7 Case was filed—and is now nowhere to be found, or at
least no longer at the address used for him in the Chapter 7 Case
notice); (b) Mr. Buchanan (who, according, to the credible
testimony, ceased his representation role in or around 1996—more
than 6 years before the Chapter 7 Case was filed—and moved to
another law firm/address prior to the Chapter 7 Case notice); and
(c) Mr. Wittenberg (who, according, to his own credible
testimony, ceased his representation role in 2001—more than 2
years before the Chapter 7 Case was filed; moved three different
times after officing at the address used in the Chapter 7 Case
notice; and claims not to remember ever receiving the Chapter 7

-15-

Case notice).

23.   Service on former counsel is not sufficient to give
Constitutionally sufficient notice to an individual.  *King v.
United States*, 65 Fed. Cl. 385, 399-400 (Fed. Cl. 2005) (finding
that where the government sent notice to an attorney who had not
represented a party for more than a year and no notice was sent
to the individual directly, notice was not sent in a manner
reasonably calculated to apprise the individual of a pending
matter affecting her rights).  A "lawyer's authority [to act on
behalf of a client] ordinarily ends when the lawyer has completed
the contemplated services."  Restatement Third of The Law
Governing Lawyers, § 31 comment (h) (2007).  While it is true
that the lawyer's apparent authority may continue after his
actual authority has ceased, a person's "belief in the lawyer's
[apparent] authority must be reasonable."  Restatement Third of
the Law Governing Lawyers, § 27 comment (c) (2007).  The evidence
at trial showed that the actual authority of all of the lawyers
to act on Ryan's and Karen's/Quinn's behalf had ceased long
before Richard Jr.'s December 2003 Chapter 7 Case.  Moreover, it
was not reasonable for Richard Jr. to believe that these three
lawyers had authority to act for Ryan and Karen/Quinn, in 2003,
when the last of the lawyers, Mr. Wittenberg, ceased representing
them in 2001.  This court finds that such a belief was not
reasonable under the circumstances, especially when Richard Jr.

-16-

had other easy avenues (such as cousin Anthony Lynch) to inquire about Ryan's and Quinn's actual mailing addresses.[9]

**B.** **Whether, Alternatively, Ryan and Quinn had Actual Knowledge (or Constructive Notice) of the Chapter 7 Case in Time to Take Action Therein**

24.   "A creditor has sufficient notice of bankruptcy proceedings even if there is no formal notice given of the filing deadlines, if he receives notice in time to act prior to the filing deadlines."  *Doucette v. Pannell (In re Pannell)*, 136 B.R. 430, 434 (N.D. Tex. 1992).

25.   "[W]here a creditor receives any notice that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and ignores the

---

[9] The court should note that, while it is holding that service on former counsel (a) whose representation has undeniably ended, and (b) where parties could not reasonably believe counsel still had apparent authority to act, is insufficient in and of itself, service on **Karen** through her former counsel **on behalf of Quinn as Quinn's next friend** was doubly ineffective to provide Quinn with actual notice of the Chapter 7 Case.  "[A] next friend's authority to act in a representative capacity expires when the minor attains capacity by reaching the age of majority." *Gonzales v. United States*, 2007 WL 1729657, *2 (S.D. Tex. 2007) (slip copy); *see also D.B. v. Mass*, 2005 WL 2896460, *1 (W.D. Tex. 2005) (not reported in F.Supp.2d); *Spell v. William Cameron & Co.*, 131 S.W. 637, 638 (Tex. Civ. App. 1910). Under Texas law, the age of majority is eighteen.  Tex. Civ. Prac. & Rem. Code § 129.001 (West 2005).  Accordingly, any service upon Karen as next friend of Quinn in 2003, after Quinn had attained the age of majority, was not effective notice and was not reasonably calculated to apprise Quinn of the Chapter 7 Case.  Karen had no authority to act for or receive service on behalf of Quinn as Quinn's next friend after Karen's authority as next friend expired upon Quinn's attainment of majority.

proceedings to which the notice refers at its peril." *Grossie v. Sam (In re Sam)*, 94 B.R. 893, 897 (Bankr. W.D. La. 1988), *aff'd*, 894 F.2d 778 (5th Cir. 1990). In *In re Sam*, the creditor became aware of the debtor's bankruptcy case eighteen days prior to the bar date to file objections to discharge, but filed a "motion objecting to the discharge of his claim" after the bar date had passed. *Grossie v. Sam (In re Sam)*, 894 F.2d 778, 778-79 (5th Cir. 1990). The Fifth Circuit indicated that "[w]hen a creditor is aware of the pendency of bankruptcy proceedings, the imposition of a duty on the part of the creditor to make an inquiry to determine the date of the first meeting of creditors, and to consult Bankruptcy Rule 4007(c) and calculate the bar date (sixty days after the date set for the initial creditors' meeting) is not so burdensome as to outweigh the need for expeditious administration of bankruptcy cases." *Id*. at 781. The creditor in *In re Sam* had received a notice of automatic stay eighteen days prior to the bar date and the Fifth Circuit found that this notice was enough to create "'actual knowledge of the case' necessary to permit him to take steps to protect his rights." *Id*. at 781-82. *See also In re Alton*, 837 F.2d 457, 460 (11th Cir. 1988) ("The statutory language of [section 523(a)(3)(B)] clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not the creditor received

-18-

official notice from the court of various pertinent dates.")

(cited with favor by *In re Compton*, 891 F.2d 1180 (5th Cir.

1990)).

26. This court concludes that Ryan and Quinn did not have

actual knowledge (or constructive notice) of Richard Jr.'s

Chapter 7 Case in time to protect their rights therein.  Ryan and

Quinn consistently and credibly testified that they did not learn

about Richard Jr.'s bankruptcy cases until February 2005 (at

unrelated family mediation).  Karen (in spite of being involved

in some post-divorce litigation with Richard Jr. in Texas state

courts) denied knowledge of Richard Jr.'s bankruptcy proceedings

until February of 2005.  Too, even if Karen did have knowledge of

Richard Jr.'s bankruptcy proceedings earlier than February of

2005, the only evidence regarding communication between Quinn and

Karen concerning matters regarding Richard Jr. is Quinn's

testimony that, because of the sensitive nature of the issues

between Quinn and Richard Jr., matters concerning Richard Jr.

were not discussed with her.  No evidence has been presented by

Richard Jr. to rebut this assertion and the court finds Quinn to

be a very credible witness.  Accordingly, the court finds that

Quinn did not have any actual knowledge of the Chapter 7 Case in

time to protect her rights therein.  The court also finds no

evidence that Ryan had any actual knowledge of the Chapter 7 Case

in time to protect his rights therein.

**C.** **Whether Ryan and Quinn have the Type of Claims Referred to in Section 523(a)(2), (4) or (6) of the Bankruptcy Code, so That They Might have Requested a Determination of Nondischargeability as to their Claims in the Chapter 7 Case**

27. Richard Jr. received his Chapter 7 discharge on April 6, 2004. As set forth above, Ryan and Quinn did not get sufficient written notice by mail of the Chapter 7 Case because service on their (or, in the case of Quinn, her mother's) former attorneys was not reasonably calculated to get to them (and did not). Furthermore, any actual knowledge or constructive notice received by Ryan and Quinn of the Chapter 7 Case occurred well after Richard Jr. received his Chapter 7 discharge-too late for Ryan and Quinn to bring dischargeability actions in the Chapter 7 Case. Accordingly, Ryan's and Quinn's claims, *to the extent that they are of a kind specified in paragraph (2), (4), or (6) of section 523 of the Bankruptcy Code*, should be determined not discharged in the Chapter 7 Case.

28. Section 523(a)(6) is the relevant statute in this particular prong of the analysis. Section 523(a)(6) prevents the discharge of any debt to the extent the creditor can prove that it arises from the "willful and malicious injury by the debtor" to the creditor.

29. At first blush, it would appear that this is the easiest issue in this dispute so far, since the Foreign Judgments from the Illinois Civil Court (earlier described)—rendered after

-20-

a trial by jury of twelve—proclaimed that "the jury expressly
found the conduct of [Richard Jr.] to be willful, intentional and
malicious," and Ryan should receive damages of $2,500,000 and
Karen, as next friend of Quinn, should receive damages of
$7,500,000.  Pls. Ex. 1, pages 23-25A; see also Pls. Ex. 1, pages
9-9G (Complaint describing injuries and conduct).

     30.  One would think, at first blush, that the doctrines of
*res judicata* and collateral estoppel (and possibly *Rooker-
Feldman*) would easily apply to the Foreign Judgments in the case
at bar.  However, Richard Jr. raised an eleventh-hour contest to
the preclusive effect of the Foreign Judgments.  Specifically,
Richard Jr. argued that:  (a) he, himself, did not get notice or
have knowledge of the jury trial in the Illinois Civil Court; (b)
that the attorney who made an appearance for him (Mr. Robert T.
Grueneberg) in the Illinois Civil Court was not authorized to
represent him in the Illinois Civil Court but, rather, was hired
by Richard Jr.'s father (hereinafter, "Richard Sr.") to monitor
the Illinois Civil Court matter and the attorney did not apprise
Richard Jr. of the jury trial; (c) Richard Jr. was not aware of
the Foreign Judgments until well after their rendering; (d)
Richard Jr. never had reason to know the significant size of
damages that Ryan and Karen/Quinn were seeking (looking back at
their prayers for relief, they only sought damages "in excess of
$30,000 and for any further relief the Court deems just and

proper"); and (e) bottom line, the Foreign Judgments were essentially default judgments entered against him without Constitutionally required notice and, at best, Ryan and Quinn must prove up section 523(a)(6) claims in this adversary proceeding (*i.e.,* prove that they have claims resulting from willful and malicious injuries) in order to receive any declaratory judgment that their claims were not discharged in the Chapter 7 Case.

31. This court must apply Illinois law to determine the preclusive effect of the Foreign Judgments. *Gober v. Terra Corp.,* 100 F.3d 1195, 1201 (5th Cir. 1996) (Courts "must look to the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect."). *See also Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1028 (5th Cir. 1998), *cert. den'd,* 526 U.S. 1068 (1999) ("Because the judgment in question was entered by an Illinois state court, we apply Illinois rules of preclusion.").

32. The court has determined that, while there is lower court authority regarding issue and claim preclusion principles in the state of Illinois, there is an absence of Illinois Supreme Court precedent settling the matter of collateral estoppel in the state of Illinois. Ironically, the Fifth Circuit has interpreted Illinois's collateral estoppel jurisprudence in the *Caton* case cited above. *Caton*, 157 F.3d at 1028. This court is, thus,

-22-

bound to follow the Fifth Circuit's guidance set forth in *Caton*.
Pursuant to *Caton*, the Illinois law of collateral estoppel
applies to default judgments.  *Id.*  "Under Illinois law
collateral estoppel applies when: (1) the issue decided in the
prior adjudication is identical with the one presented in the
pending suit; (2) the party against whom collateral estoppel is
asserted was a party or in privity with a party therein; (3)
there was a final judgment on the merits; and (4) the party
against whom collateral estoppel is asserted had a full and fair
opportunity to litigate the issue in the prior suit."  *Id.*

33.  This court has determined (in fact, determined in an
oral ruling at trial) that Ryan and Quinn made a *prima facie* case
as to all four elements of collateral estoppel under Illinois
law; specifically:  (1) the issue decided in the prior
adjudication (*i.e.,* the issue of whether Ryan and Quinn have
claims against Richard Jr. for damages from child sexual abuse)
is identical with the one presented in the pending suit; (2) the
party against whom collateral estoppel is asserted (*i.e.,* Richard
Jr.) was a party or in privity with a party therein; (3) there
was a final judgment on the merits (*i.e.,* the Foreign Judgments
were rendered in 1995 after a prove up to a jury of twelve; the
Foreign Judgments were never appealed); and (4) the party against
whom collateral estoppel is asserted had a "full and fair
opportunity to litigate the issue in the prior suit" (*i.e.,*

-23-

Richard Jr. filed an appearance in the Illinois Civil Court[10] but did not appear to defend at the jury trial).

34. This court determined (at an oral ruling at trial) that Richard Jr. should be given the opportunity to rebut this *prima facie* showing by Ryan and Quinn. Richard Jr. did, indeed, put on evidence in an attempt to rebut prong (4)—*i.e.,* that he had a "full and fair opportunity to litigate" the issues in the prior suit.[11]

35. The court concludes that Richard Jr. did not successfully or effectively rebut the *prima facie* showing by Ryan and Quinn that he had a full and fair opportunity to litigate the issues in the Illinois Civil Court.

### 1. The Alleged Renegade Lawyer Appearing for Richard Jr. in the Illinois Civil Court

36. As mentioned above, the cornerstone of Richard Jr.'s argument is that Mr. Robert T. Grueneberg, the attorney who entered an appearance on behalf of Richard Jr. before the Illinois Civil Court, was not his lawyer. But "[a] lawyer who enters an appearance before a tribunal on behalf of a person is presumed to represent that person as a client. The presumption

---

[10] *See* Pls. Ex. 1, page 13.

[11] This court further instructed the parties at trial that if the court ultimately found that Richard Jr. succeeded in rebutting Ryan's and Quinn's *prima facie* showing of a "full and fair opportunity to litigate," then Ryan and Quinn would be permitted to reopen their case and put on fresh evidence as to section 523(a)(6) "willful and malicious" injuries.

may be rebutted." Rest. 3d. The Law Governing Lawyers, § 25 (2007). "Lawyers commonly enter appearances before tribunals. It would be highly unusual for a lawyer to do so erroneously and still more unusual for that to remain uncorrected." *Id*. at § 25 comment (b). The objecting party bears the burden of persuasion that the lawyer's appearance was without actual authority. *Id*. at § 25 comment (c).

37. Richard Jr. asserts that he did not hire Mr. Grueneberg and that Mr. Grueneberg was Richard Sr.'s lawyer, implying, at least, that his father hired Mr. Grueneberg to file an appearance in the Illinois Civil Court on Richard Jr.'s behalf without Richard Jr.'s authorization. Richard Sr., who testified at trial, denies any knowledge of the Illinois Civil Court lawsuit and denies having hired Mr. Grueneberg to represent Richard Jr. in connection therewith.

38. Were the court to rely on both of these witnesses' testimony, the court would be left with the incredible conclusion that Mr. Grueneberg, of his own volition, at the request of no one, and reporting to no one, entered an appearance on behalf of Richard Jr. before the Illinois Civil Court and actually physically appeared before that court to represent Richard Jr.'s interests. Richard Jr. is asking the court to conclude, in effect, that Mr. Grueneberg is a renegade attorney who chose to enter into the fray of litigation against Richard Jr. with no

engagement of any kind and, contrary to Mr. Grueneberg's ethical duties as an attorney, with no authorization to act on behalf of Richard Jr.   Such a conclusion strains reason.

39.   The court finds Richard Jr.'s testimony unpersuasive and not credible.   The court notes that Mr. Greuneberg was conspicuously absent to answer the ultimate question, of "who hired you?," so the court must answer the question to the best of its ability with the evidence before it.   Richard Jr. has not persuaded this court that Mr. Grueneberg entered an appearance on his behalf with no authority.   The court believes Richard Sr. when he says that he did not hire Mr. Grueneberg to appear before the Illinois Civil Court on Richard Jr.'s behalf.   The court finds that the best evidence of who Mr. Grueneberg was representing is his appearance entered on behalf of the defendant, Richard Jr., before the Illinois Civil Court.   That, coupled with Richard Sr.'s unequivocal denial of having hired Mr. Grueneberg on Richard Jr.'s behalf, plus testimony of Karen regarding Mr. Grueneberg's physical appearance before the Illinois Civil Court (asserting he was representing Richard Jr.), is enough for this court to conclude that Mr. Grueneberg was Richard Jr.'s attorney, in every sense of that word, for the purposes of the lawsuit before the Illinois Civil Court.

**2. Was Mr. Grueneberg's Participation Before the Illinois Civil Court Sufficient to be a "Full and Fair Opportunity" for Richard Jr. to Litigate the Issue for which Collateral Estoppel is Sought?**

40. Since Richard Jr. did not file an answer in the Illinois Civil Court, the court must look to Mr. Grueneberg's activities before the tribunal on behalf of Richard Jr. to determine whether Richard Jr. had a full and fair opportunity to litigate the issue of child sexual abuse and the willful and malicious damages claims of Ryan and Quinn.

41. The Fifth Circuit in *In re Caton*, again noting that the Illinois Supreme Court had not yet ruled whether collateral estoppel applied to default judgments in Illinois, found that, in Illinois, "collateral estoppel may be applied to a default judgment provided no injustice results from the application." *In re Caton*, 157 F.3d at 1028. "For collateral estoppel to apply, a party must have had a full and fair opportunity to litigate the issue in the prior action and there must be no undue unfairness to the party estopped." *Id.* at 1029. In *Caton*, the defendant had been properly notified of the proceeding and had even filed a notice of removal of the case to Federal court, but after the case had been remanded, the defendant chose not to appear in the proceeding further, even though the plaintiff sought high-dollar damages against the defendant. "Under these circumstances, it cannot be disputed that [the defendant] had an opportunity to

-27-

litigate. [The defendant] does not contest that he received notice of the default, as well as the subsequent evidentiary hearing, and he provides no explanation for his failure to pursue his legal remedies . . . ." *Id.*

42. In deciding *In re Caton*, the Fifth Circuit relied upon *In re Paternity of Rogers*, 297 Ill. App. 3d 750 (Ill. App. 2nd Dist. 1998) (superseded by statute on other grounds). In *In re Paternity of Rogers*, Mr. Rogers filed an action in Illinois circuit court to establish the nonexistence of a parent-child relationship in order to declare that he was not liable for child support. His petition was dismissed on the grounds of *res judicata* "and, more particularly, collateral estoppel." *Id.* at 752. The record shows that a child was born to Susan, his ex wife, four months before she was married to Mr. Rogers. Two years later, the marriage was dissolved and Mr. Rogers failed to appear at the dissolution hearing and was found in default. The state court determined that Mr. Rogers received due notice of the proceedings and the state court was satisfied that all proper means had been taken to notify Mr. Rogers of the proceedings. The state court found, *inter alia*, that the child was Mr. Rogers' child. The state court ordered custody to be with Susan and ordered Mr. Rogers to pay child support. *Id.* Six years later, Mr. Rogers brought the paternity suit. The state court dismissed the paternity suit on the grounds of *res judicata* and collateral

estoppel.  Mr. Rogers moved for reconsideration asserting that the issue of paternity was not fully adjudicated on the merits and asserting that Susan took deliberate steps to prevent him from appearing at the proceeding.  *Id*. at 753.  That motion for reconsideration was denied and Mr. Rogers appealed.

43.  The Illinois appellate court determined that Mr. Rogers was barred by *res judicata* and collateral estoppel from relitigating the issue of paternity.  The appellate court found that Mr. Rogers was afforded a full and fair opportunity to contest the issue of parentage in the original divorce proceeding and the court found "no injustice in applying the doctrine of collateral estoppel in this case."  *Id*. at 756.  And that is primarily because Mr. Rogers was properly notified of the proceeding and it appeared that he chose not to appear and then waited six more years to challenge the legality of the finding of parentage.  *Id*.

44.  The Illinois Civil Court record, which forms the basis of Ryan's and Quinn's *prima facie* case for collateral estoppel, contains: (1) the criminal plea by Richard Jr. and sentencing order; (2) the civil complaint alleging child sexual assault; (3) an entry of appearance by Mr. Grueneberg describing himself as "attorney for defendant" (Richard Jr.); (4) various mailings addressed to Mr. Grueneberg; (5) two certificates of service of a summons in the civil court proceeding signed by Mr. Carroll

-29-

(attorney for Ryan and Karen, as next friend for Quinn); (6) an order of the Illinois Civil Court granting an extension of time for Richard Jr. to file an answer (which is at least **some** indication that an extension was requested on Richard Jr.'s behalf). This is supplemented by testimony from Karen that Mr. Grueneberg participated in at least one hearing before the Illinois Civil Court on Richard Jr.'s behalf.

45. Richard Jr. attempts to rebut Ryan's and Quinn's *prima facie* case that he had a full and fair opportunity to litigate the issue by (a) denying that Mr. Grueneberg was his lawyer (the court has already determined that Mr. Grueneberg was, in fact, Richard Jr.'s lawyer); and (b) by arguing that, in any event, he and/or Mr. Grueneberg were not properly served so as to put Richard Jr. on notice of the proceedings before the Illinois Civil Court. The evidence before the court regarding service upon Richard Jr., personally, are (1) Pls. Ex. 1, pages 15 and 16, Mr. Carroll's certifications that he served Richard Jr. with the Illinois Civil Court complaint on January 9, 1993, (2) Richard Jr.'s self-serving denial of receipt, and (3) Richard Jr.'s further self-serving assertion that he would definitely have remembered seeing such notice, despite his apparent faulty memory regarding other significant events occurring at roughly a similar time (and after) to the time of service of the Illinois Civil Court complaint. The certificates of service filed by Mr.

-30-

Carroll provide that "[u]nder penalties as provided by law
pursuant to Section 1-109 of the [Illinois] Code of Civil
Procedure, the undersigned certifies that the statements set
forth in this instrument are true and correct, except as to
matters therein stated to be on information and belief and as to
such matters the undersigned certifies as aforesaid that he
verily believes the same to be true."  Section 1-109 of the
Illinois Code of Civil Procedure provides that "[a]ny pleading,
affidavit or other document certified in accordance with [section
1-109] may be used in the same manner and with the same force and
effect as though subscribed and sworn under oath," and further
provides that any person who knowingly makes a false statement
material to the issue or point in question in any pleading,
affidavit or other document so certified shall be guilty of a
Class 3 felony.  Accordingly, certification such as was made by
Mr. Carroll was a serious matter.  In the end, we have the sworn
statement of Mr. Carroll, via the certificates of service, that
he served Richard Jr., versus the sworn statement of Richard Jr.
(in testimony before this court) that he never received the
Illinois Civil Court complaint.

46.  But, again, Richard Jr.'s denial of receipt of notice
is undercut by the appearance of Mr. Grueneberg on his behalf
before the Illinois Civil Court.  Mr. Grueneberg filed a notice
of appearance on behalf of Richard Jr., appeared before the

Illinois Civil Court at a hearing on behalf of Richard Jr.,
apparently requested an extension of time to answer on behalf of
Richard Jr., and was served various documents and pleadings in
the Illinois Civil Court case. Specifically, Mr. Grueneberg was
served: (1) a supplemental notice of plaintiffs' motion for
default judgment (*see* Pls. Ex. 1, page 18), at 300 South
Riverside Plaza, Suite 1480 South, Chicago, Illinois 60606-6617,
which, though not the address that appears on his notice of
appearance, is identical to an address utilized by Mr. Grueneberg
as reflected by Pls. Ex. 5 and 7; and (2) an order resetting the
prove up hearing to July 12, 1995 (*see* Pls. Ex. 1, page 21 and
22A), which was served upon the address on the face of
Greunberg's notice of appearance except that the zip code was
wrong.

47. This court believes that Richard Jr. was represented by
counsel before the Illinois Civil Court. Counsel filed an
appearance. Counsel appeared before the Illinois Civil Court
for, at least, one hearing, which involved, among other things,
whether there would be a jury trial. Counsel apparently
requested an extension of time for Richard Jr. to answer the
complaint (though no answer was ever filed). Counsel was served
pleadings in the Illinois Civil Court case. Richard Jr. was
properly notified through his counsel of record of the hearing on
April 12, 1995 regarding Plaintiffs' Motion for Default Judgment.

Pls. Ex. 1, page 18; Pls. Ex. 5. A hearing was held on April 12, 1995, and an order finding that "all parties having been given due notice" and that Richard Jr. "is in default for failing to answer or otherwise plead" (Pls. Ex. 1, page 17) was entered. Default judgment was entered against Richard Jr. on July 12, 1995, after he had appeared before the Illinois Civil Court through counsel but had failed to answer or otherwise plead.

48. Comparing this set of facts to that in *In re Paternity of Rogers*, the court is satisfied that Richard Jr. had a full and fair opportunity to litigate the issue of willful and malicious injury to Ryan and to Quinn before the Illinois Civil Court. He just simply chose not to do so. Moreover, *In re Caton's* facts are also comparable to the case at bar. In both this case and in *In re Caton*, we have a defendant who participated in some way in the state court action, who nevertheless never answered the complaint, and against whom default judgment was eventually entered after an evidentiary hearing. Like in *In re Caton*, therefore, the default judgment against Richard Jr. was entered after he had participated in the case through counsel. And under such circumstances, this court finds that Richard Jr. had a full and fair opportunity to litigate the issue that is now before this court.

49. The court further finds no injustice would result in applying the doctrine of collateral estoppel in this case.

-33-

50. Accordingly, collateral estoppel applies to the Foreign Judgments, and this court will not relitigate the issues decided therein.

**3. Do the Foreign Judgments Indeed Give Rise to the Type of Claim Contemplated at 11 U.S.C. § 523(a)(6)?**

51. Since this court has determined that the Foreign Judgments have collateral estoppel effect, the court next examines the judgments in light of Illinois law, to determine whether the judgments give rise to the kind of claims contemplated in subsections (a)(6) of section 523 of the Bankruptcy Code.

52. "Under Illinois law, by failing to plead [Richard Jr.] admits by default the factual allegations contained in the complaint." *In re Caton*, 157 F.3d at 1029. "The default judgment must rest upon the allegations in the petition." *Id*. "Thus, because the factual allegations are deemed admitted and the default judgment necessarily rests thereon, [this court is] able to determine conclusively the issue decided by the [Illinois Court] when rendering the default judgment." *Id*.

53. "A discharge under section 727 . . . of [the Bankruptcy Code] does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating

-34-

that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis the Court's). Following the Supreme Court in *Kawaauhau v. Geiger*, the Fifth Circuit determined that either an objective substantial certainty of injury or a subjective motive to cause injury meets the Supreme Court's definition of "willful" in section 523(a)(6). *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998), *cert den'd* 526 U.S. 1016 (1999). But the injury to another must not only be "willful" it must be "malicious." "'[M]alicious' means without just cause or excuse." *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 486 (5th Cir. 1986). "[W]here an act is deliberately and intentionally done with knowing disregard for the rights of another it falls within the statutory definition of malice even if there is an absence of malice toward the particular creditor." *Federal Deposit Insurance Corp. v. LeFeve (In re LeFeve)*, 131 B.R. 588, 602 (Bankr. S.D. Miss. 1991).

54. The Illinois Civil Court complaint (Pls. Ex. 1, page 9) describes with particularity the injuries perpetrated by Richard Jr. upon Quinn and Ryan using descriptions like "willful and malicious assault and battery," and articulating different types of physical and emotional long term injuries. By failing to plead, Richard Jr. admitted those factual allegations. Moreover,

the jury found that Richard Jr. willfully, intentionally, and maliciously injured Ryan and Quinn (Pls. Ex. 1, pages 23-25A). Accordingly, the court has enough to determine that Ryan and Quinn's claims are of a kind specified in section 523(a)(6) such that, pursuant to section 523(a)(3)(B), they should be deemed not dischargeable and not discharged in the Chapter 7 Case.

## II. The Easier Question: Survival of Ryan's and Quinn's Claims in the Chapter 13 Case

55. Briefly, Ryan's and Quinn's claims were also not discharged in Richard Jr.'s Chapter 13 Case. Richard Jr. filed the instant Chapter 13 Case on April 7, 2004, one day after receiving his Chapter 7 discharge.[12] Ryan's and Quinn's claims were not scheduled in the Chapter 13 Case, and they received no written notice of the Chapter 13 Case. The last date on which creditors could have filed proofs of claim was August 25, 2004. *See* Fed. R. Bankr. P. 3002(c). This date was well before Ryan and Quinn ever became aware of Richard Jr. having filed bankruptcy (in February of 2005). Unlike in Chapter 11, there is no method by which creditors in a Chapter 13 case can file a late proof of claim; Rule 9006(b)(3) does not permit extending the Rule 3002(c) deadline for "excusable neglect." *In re Hogan*, 346 B.R. 715, 721-22 (Bankr. N.D. Tex. 2006). Accordingly, it was too late for Ryan and Quinn to file a timely proof of claim in

---

[12] *See* discussion of "Chapter 20" at footnote 3 herein.

the Chapter 13 Case upon becoming aware, in February of 2005, that Richard Jr. had filed bankruptcy, and there was no way for them to successfully request an extension of time to file a late proof of claim. Although there is a mechanism for a debtor or trustee to file a late proof of claim on a creditor's behalf when the creditor fails to do so, neither Richard Jr. nor the Chapter 13 trustee filed a proof of claim on behalf of Ryan and/or Quinn in the Chapter 13 Case.

56. So, when Richard Jr. received his Chapter 13 discharge on April 4, 2006, there was no discharge of the claims of Ryan and Quinn, which survived the Chapter 7 Case pursuant to section 523(a)(3)(B). The section 1328(a) discharge that Richard Jr. received applied to "all debts provided for by the plan or disallowed under section 502 of this title," with certain inapplicable exceptions. Ryan and Quinn's debts were neither provided for by the plan nor disallowed under Section 502. Accordingly, Ryan and Quinn's claims were not discharged in the Chapter 13 Case.

## III.  Laches

57. The last issue that the court feels compelled to explore is whether the doctrine of laches applies here to preclude the relief being sought by Ryan and Quinn.

58. Laches arises after an unreasonable and inexcusable delay, to the prejudice of the defendant. Am. Jur. 2d Equity

§ 149 n. 89. The principle that the passage of time can preclude relief has deep roots in our law. "It is well established that laches, a doctrine focused on one side's inaction and the other's legitimate reliance, may bar long-dormant claims for equitable relief." *City of Sherrill, N.Y. v. Oneida Indian Nation of New York*, 544 U.S. 197, 217 (2005). The *Sherrill* court cited cases from the mid-1800s for this principle, indicating that this is, indeed, an ancient principle of law. "[C]ourts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. Long acquiescence and laches by parties . . . are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment . . . which will appeal to the conscience of the chancellor [the court]." *Badger v. Badger*, 69 U.S. 87, 94-95 (1864). "This doctrine of an equitable bar by lapse of time, so distinctly announced by the chancellors of England and Ireland, has been ruled with equal force by this tribunal in [four prior cases]. It should now be regarded as settled law in this court." *Bowman v. Wathen*, 42 U.S. 189, 194 (1843).

59. The Supreme Court has articulated that the laches defense bars a plaintiff from maintaining a suit "if he

unreasonably delays in filing a suit and as a result harms the defendant." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-122 (2002). A laches defense requires a showing of "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *See Id.* (citing *Kansas v. Colorado*, 514 U.S. 673, 687 (1995)).[13]

60. The Fifth Circuit has divided these two elements into three, but together they call for the same requisites: to show that cause of action is barred by laches, defendant must establish the occurrence of (1) a delay, (2) that was not excusable, and (3) that caused the defendant undue prejudice. *Baylor Univ. Medical Ctr. v. Heckler,* 758 F.2d 1052, 1057-1058 (5th Cir. 1985); *Clymore v. U.S.,* 217 F.3d 370, 376 (5th Cir. 2000) (citing *Baylor Univ. Medical Ctr.,* 758 F.2d at 1057*). See also Altech Controls Corp. v. E.I.L. Instruments, Inc.,* 33 F.Supp.2d 546, 553 (S.D.Tex. 1998) ("the [defendant] must show (1) that the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the point when he knew or reasonably should have known of its claim against the defendant and (2) his delay materially prejudiced or injured the defendant."); *In re Morris,* 155 B.R. 422, 429-430 (Bankr.W.D.Tex.

---

[13] In the *National R.R. Passenger Corp.* case, the Supreme Court did not address the question of how prejudice must be shown or how much prejudice must be shown. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 122.

1993) (citing *Baylor Univ. Medical Ctr.*, 758 F.2d at 1057); *In re Ramey* (Slip Copy), 2006 WL 2818987 (Bankr.S.D.Tex. 2006) (Steen, J.) (finding that laches is established if there is (1) a delay in asserting the right or claim, (2) the delay was not excusable; and (3) there was undue prejudice to the defendant).

61. When a *prima facie* defense of laches is made, the burden of production shifts to the plaintiffs to rebut or eliminate the presumption by demonstrating excusable delay and/or by showing lack of prejudice. *Altech Controls Corp.*, 33 F.Supp.2d at 554. If the plaintiff does not submit sufficient evidence, "the court must infer unreasonable delay and prejudice." *Id.* If the plaintiff does present sufficient evidence that raises a genuine issue of fact as to either lack of prejudice or excusable delay, the burden of production shifts back to the defendant to show unreasonable delay and prejudice. *Id.* "Even where the defendant shows undue delay and prejudice by a preponderance of the evidence, the application of the equitable defense of laches is not mandatory but is within the sound discretion of the district court, which must examine all the facts and circumstances of a particular case in its determination." *Id.*

62. "There is no fixed period of time *per se* classified as 'unreasonable' delay; that determination rests on the circumstances of the particular case." *Altech Controls Corp. v.*

-40-

*E.I.L. Instruments, Inc.,* 33 F.Supp.2d at 553 (finding that a six year delay in initiating a patent infringement suit raises a rebuttable presumption of unreasonable, inexcusable delay prejudicial to the defendant). Courts require the defendant to provide particularized evidence showing the delay is unreasonable; conclusory statements are not sufficient. *In re Beaty*, 306 F.3d 914, 928 (9th Cir. 2002).

63. Ryan and Quinn testified convincingly that they had no actual knowledge of Richard Jr.'s bankruptcy filing(s) until February of 2005. At that time, they did not know of any of the details such as the court in which the case was pending or case number, or even whether a bankruptcy case was still pending. Fourteen months later (in April 2006), Ryan and Quinn pursued relief in the bankruptcy court. Their testimony was simply that it took that long to investigate the details and come up with the money to hire a lawyer.

64. The court concludes that Richard Jr. has not set forth a *prima facie* defense of laches to shift any burden of production on this topic to Ryan and Quinn. Richard Jr. has provided to this court, essentially, the conclusory argument that fourteen months to file a request for relief in the bankruptcy court is just too long. But Richard Jr. has shown no prejudice—material or otherwise—to himself as a result of the fourteen month span between Ryan's and Quinn's first discovery of Richard Jr.'s

bankruptcy and their taking action before this court.  While the court had some initial concerns about the fourteen month delay, under the circumstances, this court finds that fourteen months is not an unreasonably long or inexcusable delay that prejudiced Richard Jr., especially in light of this court's conclusion that section 523(a)(3)(B) applies.

65.  To better understand the lack of the significance of the fourteen-month delay and the lack of any prejudice to Richard Jr., the court must hypothesize about what may have happened differently (if anything) had Ryan and Quinn taken action in the Chapter 13 Case immediately after February 2005.  The answer is that Ryan and Quinn could have done nothing—there were no proactive measures they could have taken in February 2005 to change their treatment in, or consequences from, the Chapter 13 Case.  It was too late for them to file a proof of claim in February 2005.  (There is no "excusable neglect" mechanism for a creditor to file a late proof of claim in chapter 13.  *See* Fed. R. Bankr. P. 3002(c) and 9006(b)(3).)  There was no mechanism to bring a section 523(a)(6) dischargeability action (since under section 1328(a), a chapter 13 debtor receives a super-discharge of even section 523(a)(6) type claims).[14]  Most importantly,

---

[14] The "super discharge" concept (compare 11 U.S.C. § 1328(a) and 11 U.S.C. § 523(a)) is a feature of chapter 13 that was scaled back slightly under BAPCPA.

-42-

there would be no discharge of Ryan's and Quinn's claims in any event, since the super-discharge of section 1328(a) only applies to claims provided for in a plan or specifically disallowed during the case (Richard Jr.'s plan had not provided for their claims and their claims had not been specifically disallowed in the case). Thus, what real consequence/motivation to Ryan and Quinn would there have been to act immediately? More importantly, though, how was Richard Jr. prejudiced by the fourteen-month delay—*i.e.,* how might his strategies have played out differently had Ryan and Quinn come forward in February 2005? Richard Jr. would have had no motivation to himself file a late proof of claim on Ryan's and Quinn's behalf (which Fed. R. Bankr. P. 3004 and 9006(b)(1), combined, may have permitted him to do) since his plan contemplated a 100% payout to his unsecured creditors (the court takes judicial notice of the plan [Doc. No. 10] confirmed in Richard Jr.'s case) and Ryan's and Quinn's claims would have rendered the plan infeasible.[15] And there could have been no way for Richard Jr. to get a "super-discharge" of Ryan's and Quinn's claims, pursuant to section 1328(a), without either providing for the claims in his plan or having the claims disallowed (the latter of which he could not do, due to the notice and collateral estoppel problems hereinbefore

---

[15] The feasibility problem is in addition to the obvious section 109(e) Chapter 13 eligibility problem that would have been created.

-43-

described).  Not only was Richard Jr. not prejudiced, but he arguably has even benefitted from Ryan's and Quinn's delay. Specifically, he now has his Chapter 13 discharge of all claims except Ryan's and Quinn's (as of April 2006).

66.  Accordingly, this court finds that Ryan's and Quinn's specific claims before this court are not barred by laches.  The fact is that there would have been no way to navigate around or provide for Ryan's and Quinn's claims if this had all percolated earlier in the Chapter 13 Case.  Richard Jr. has shown no inexcusable delay or undue prejudice to trigger the defense of laches.

## Conclusion

For the foregoing reasons, the court declares that Ryan's and Quinn's Foreign Judgments (1) are entitled to collateral estoppel effect; (2) were not discharged in Richard Jr.'s Chapter 7 Case; and (3) were not discharged in Richard Jr.'s Chapter 13 Case.  The court will enter a separate judgment for the Plaintiffs consistent with this memorandum opinion.

### END OF MEMORANDUM OF OPINION ###